J-A11017-19

2019 PA Super 269

| IN RE: INVOLUNTARY TERMINATION OF PARENTAL RIGHTS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| J.R.E., A MINOR | : | |
| APPEAL OF: D.E., MOTHER | : | |
| | : | No. 1674 MDA 2018 |

Appeal from the Order Entered September 11, 2018
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  22-AD-2018

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

OPINION BY OLSON, J.:                    **FILED: SEPTEMBER 3, 2019**

Appellant, D.E. (Mother), appeals *pro se* from an order entered on September 11, 2018 in the Orphans' Court Division of the Court of Common Pleas of Dauphin County that involuntarily terminated her parental rights to J.R.E. (hereinafter Child).  We reverse.

Mother and B.J. (Father) are the biological parents of Child, who was born in November, 2006 in Florida.  Following Child's birth, Mother assumed custody of Child and Father returned to Pennsylvania.  Child resided with Mother without incident for approximately six months.

In May 2007, when Child was approximately six months old, Mother transported Child to a local hospital in Florida where he presented with hemorrhaging in the eyes and swelling of the brain.  Doctors believed Child's injuries were consistent with shaken baby syndrome.  Mother admitted to Florida authorities that her paramour, T.B., caused the injuries to Child.

Because Child was diagnosed with shaken baby syndrome and only Mother and T.B. served as his caretakers, Florida officials determined that Child was at great risk of harm if he continued to reside with Mother. Consequently, Child was removed from Mother's custody.

Eventually, Mother received permission to have unsupervised visits with Child on weekends, with a goal of reunification, provided that a safety plan would be implemented. Court records from Florida show that Mother enjoyed unsupervised visitation with Child from January 2008 through mid-March 2008 and that overnight visitation commenced on March 14, 2008. Mother's visitation program proceeded well until April 28, 2008 when, during an unannounced visit, a Florida guardian *ad litem* discovered an unapproved person (believed to be Child's abuser) in Mother's home during one of her visitation periods with Child.

After this incident, Child was placed into Father's custody in Pennsylvania on August 8, 2008. From that date until the present, Child has been under the care and custody of Father and his wife, K.J. Child believes that K.J., his step-mother, is his biological mother.

In the years since Father acquired custody, Mother has had only sporadic contact with Father and enjoyed only indirect contact with Child. Mother occasionally communicated with Father by telephone and through social media and has infrequently forwarded packages containing clothing for Child. Father, however, has not cooperated with Mother's efforts to contact Child. Instead, he has declined her telephone calls and rejected her packages.

When he allowed Child to keep some of the items sent by Mother, he did not inform Child who forwarded the gifts.

Presently, Mother holds a full-time job in Florida as a surgical technician and is engaged to be married. She also has two younger children who understand that Mother has a child from a prior relationship.

In February 2017, Mother purchased airfare from Florida to Pennsylvania in the hope that Father would permit Child to meet his biological mother. Upon arrival, however, Father barred any contact between Child and Mother.

On March 13, 2017, Mother filed a complaint seeking custody of Child and seeking Child's enrollment in counseling aimed at developing and implementing a plan for reunification with Child. Mother filed a petition for modification of custody on September 20, 2017. Mother's custody action against Father remains pending at this time.

Father filed the instant petition to involuntarily terminate Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a) on March 1, 2018.[1] Mother filed a responsive pleading on July 2, 2018 opposing termination. After a continuance, the trial court convened a hearing on Father's termination petition on June 20, 2018. Father and Mother testified at the hearing. In addition, an attorney-guardian *ad litem* (GAL) appointed to represent Child testified. The GAL recommended that Mother's parental rights be terminated

---

[1] On the same date, Father and K.J. filed a petition to allow K.J. to adopt Child.

- 3 -

since Child did not know of Mother's existence and since reunification would not be in Child's best interest. The trial court adopted the GAL's recommendation and determined that Father met his burden of proof under 23 Pa.C.S.A. § 2511(a)(1). In addition, the court found that termination of Mother's parental rights would be in Child's best interest under 23 Pa.C.S.A. § 5328(a), which identifies the relevant statutory factors governing an award of custody. Mother's timely appeal followed.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result,

as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. **In re Adoption of Atencio**, 650 A.2d 1064, 1066 (Pa. 1994).

**In re Adoption of S.P.**, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained: "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" **Id.**, *quoting* **In re J.L.C.**, 837 A.2d 1247, 1251 (Pa. Super. 2003).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we first address section 2511(a)(1) and then move on to section 2511(b), which the trial court did not address. Section 2511 provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

A petitioner seeking termination of parental rights under Section 2511(a)(1) must demonstrate through clear and convincing evidence that, for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrated a settled purpose to relinquish parental rights or that the parent refused or failed to perform parental duties. *In Re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

With respect to subsection 2511(a)(1), our Supreme Court has held:

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1988). Further,

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re N.M.B.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

This Court has long recognized that a parent is required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

In *Adoption of S.P.*, our Supreme Court reiterated the standard with which a parent must comply in order to avoid a finding that she abandoned her child.

Applying [*In re Adoption of McCray*, 331 A.2d 652, 655 (Pa. 1975)] the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." [*McCray*] at 655.

* * *

Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

*Adoption of S.P.*, 47 A.3d at 828, *quoting In re: Adoption of McCray*, 331 A.2d at 655 (footnotes and internal quotation marks omitted).

The trial court reasoned as follows in finding that Father met his burden under section 2511(a)(1):

> [The trial c]ourt is under the belief that [Mother] has clearly failed to have steady and consistent contact with [Child]. Simply put, sending gifts through the mail and showing up unexpectedly is not enough to establish a consistent and steady relationship. [Mother's] minimal attempts at contact were not serious enough to demonstrate her desire to create a lasting relationship.

Trial Court Opinion, 10/30/18, at 2.

After careful review of the certified record, we conclude that Father has not met his burden of showing, through clear and convincing evidence, that Mother "for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511(a)(1). Although the record establishes that Mother had no contact with Child during the relevant statutory period, and very little contact for a lengthy period prior to that timeframe, it is equally clear that the lack of contact and support is due, in substantial part, to a lack of cooperation and reasonable accommodation on the part of Father, the custodial parent. As the October 30, 2018 opinion makes clear, the trial court made no effort to examine Mother's explanation for her conduct. In the absence of an individualized assessment of the explanations offered by Mother who faced permanent severance of her parental connection to Child, there could be no reasoned determination that the circumstances of this case clearly called for involuntary termination. Hence, the trial court abused its discretion in finding that the record was sufficient to support termination under section 2511(a)(1).

Although our discussion could end with our disposition of the section 2511(a) analysis, we turn now to discuss the second part of a termination analysis which looks to section 2511(b). This Court has stated that "once the statutory grounds for termination have been met under Section 2511(a), the [trial] court **must** consider whether termination serves the needs and welfare of the child, pursuant to [s]ection 2511(b)." *In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*) (emphasis added). Instead of examining section 2511(b), the court considered Child's "best interests" under 23 Pa.C.S.A. § 5328(a). In so doing, the court failed to consider the proper statutory provisions in terminating Mother's parental rights to Child. This was error.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, 620 A.2d 481, 485 (Pa. 1993), th[e Supreme] Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

In the exceptional circumstances presented in this case, where Child has not been informed of Mother's existence and believes that K.J. is his biological

mother, the trial court elected to forgo the mandatory analysis under section 2511(b), which examines the emotional bond between a parent facing termination and her child. The court instead considered Child's "best interests" under 23 Pa.C.S.A. § 5328(a), a statutory provision that sets forth the factors to be considered in making an award of custody. We strongly suspect that this clearly erroneous choice was made to avoid the disclosure of Mother's true identity to Child, as the court adopted the GAL's belief that Child's reintroduction to Mother would be highly disruptive. **See** Trial Court Opinion, 10/30/18, at 3 ("It is [the trial court's] opinion that it is in [Child's] best interest to maintain the lifestyle that he has been living for approximately the past eleven years. Reintroducing [Mother] to [Child] as his biological mother would be highly disruptive and detrimental to his life, considering that he is under the belief that [K.J.] is his mother. The [GAL] also held this same viewpoint."). In any event, while it may be correct that, in the short term, reintroduction may prove disruptive, it is more probable that Child's longer term interests in stability and security in knowing his true parentage can only be served by a comprehensive program of counseling and accurate identification of his biological parents.[2] Permanently severing a bond between

---

[2] In **In Re Adoption of L.B.M.**, 161 A.3d 172, 180 (Pa. 2017), our Supreme Court held that orphans' courts must appoint counsel to represent the legal interests of any child involved in a contested involuntary termination proceeding pursuant to 23 Pa.C.S. § 2313(a). The Court further explained that a child's legal interests are distinct from his or her best interests, in that

a natural parent and a child in order to perpetuate a relationship built upon a misrepresentation does not, clearly and convincingly, serve the long-term well-being and emotional interests of Child. As these unique and challenging issues were never explored by the trial court, we cannot agree that the record would support termination under section 2511(b). Accordingly, we reverse.

Order reversed.

_____

a child's legal interests are synonymous with the child's preferred outcome, while a child's best interests must be determined by the court. *Id*. at 174.

Here, an attorney-GAL appointed to represent Child advocated solely for Child's best interests. At the time of the proceedings before the trial court, Child was approximately eleven years old, had no contact with his biological mother since he was an infant, and believed his step-mother was his biological mother. Akin to the preferred outcome concept articulated by our Supreme Court in *L.B.M.*, Child might have a legal interest in learning of and developing a relationship with his biological mother that does conflict with his best interests. Medical issues or issues with identity may arise in the future that necessitate identification of biological relations. Moreover, since Child was born in November 2006, the anticipated adoption by his step-mother will not be completed before Child's twelfth birthday. Thus, Child must consent to it. *See* 23 Pa.C.S.A. § 2711(a)(1). As these issues were never explored by either the trial court or the GAL, Child was impermissibly deprived of his statutory right to counsel who would protect his legal interests. *See In re Adoption of T.M.L.M.*, 184 A.3d 585, 590 (Pa. Super. 2018) ("[Under *L.B.M.*,] it is clear that where a court appoints an attorney ostensibly as counsel, but the attorney never attempts to ascertain the client's position directly and advocates solely for the child's best interests, the child has been deprived impermissibly of his statutory right to counsel [under 23 Pa.C.S.A. § 2313(a) who serves] his legal interests.").

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/03/2019