J-S55045-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN RE: ADOPTION OF: S.R.A. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.M.A. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 877 WDA 2020 |

Appeal from the Decree Entered July 22, 2020
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  No. A 88 of 2019

BEFORE:   BOWES, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    FILED DECEMBER 29, 2020

A.M.A. ("Father") appeals from the order dated July 21, 2020, and entered July 22, 2020, granting the petition filed by C.M. ("Mother"), seeking to involuntarily terminate Father's parental rights to S.R.A. ("Child") (born in June of 2013), Mother's minor, female child with Father, pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1) and (b), so that her husband, G.M., ("Stepfather"), may adopt Child.  We affirm.

On December 19, 2019, Mother and Stepfather filed the petition to involuntarily terminate Father's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(1) and (b).  On December 23, 2019, Mother and Stepfather filed a

_____

[*] Retired Senior Judge assigned to the Superior Court.

petition for Stepfather to adopt Child.[1]   Mother and Stepfather filed an amended termination petition on February 10, 2020, again raising 23 Pa.C.S. § 2511(a)(1) and (b).   On March 10, 2020, the trial court appointed Attorney Margaret Gold to represent Child as Child's guardian ad litem and legal interests counsel ("GAL/Counsel").   On July 20, 2020, the GAL/Counsel filed a report, in which she summarized her interviews with Father, Mother, Stepfather, and Child.   At the conclusion of her report, the GAL/Legal Counsel recommended that Father's paternal rights should be terminated.   See Trial Court Opinion, 9/9/20, at 1.

_____

[1] In In re Adoption of L.B.M., 639 Pa. 428, 161 A.3d 172 (2017) (plurality), our Supreme Court held that 23 Pa.C.S. § 2313(a) requires the appointment of counsel to represent the legal interests of any child involved in a contested involuntary termination proceeding.  The Court defined a child's legal interest as synonymous with his or her preferred outcome.  In In re T.S., 648 Pa. 236, 192 A.3d 1080 (2018) (filed August 22, 2018), the Supreme Court held that the trial court did not err in allowing the children's GAL to act as their sole representative during the termination proceeding because, at two and three years old, they were incapable of expressing their preferred outcome.  The Court explained, "if the preferred outcome of the child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests; as such, the mandate of Section 2313(a) of the Adoption Act that counsel be appointed 'to represent the child,' 23 Pa.C.S. § 2313(a), is satisfied where the court has appointed an attorney-[GAL] who represents the child's best interests during such proceedings."  Id. at 257, 192 A.3d at 1092-1093.  Here, Child was seven years old at the time of when GAL/Counsel interviewed her. We do not comment on the quality of the GAL/Counsel's representation of Child.  See In re: Adoption of K.M.G., 219 A.3d 662, 669 (Pa. Super. 2019) (en banc) (filed September 13, 2019) (holding that this Court has authority only to raise sua sponte the issue of whether the trial court appointed any counsel for the child, and not the authority to delve into the quality of the representation) (affirmed, ____ A.3d____ (Pa., filed November 10, 2020).

On July 21, 2020, the trial court held an evidentiary hearing on the petition. Mother and Stepfather testified on their own behalf. N.T., 7/21/20, at 6, 27. Father presented the testimony of his mother, Child's paternal grandmother ("Paternal Grandmother"), and testified on his own behalf. Id. at 37, 48. In the order dated July 21, 2020, and entered on July 22, 2020, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (b).

On August 21, 2020, Father filed a notice of appeal, along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In his brief, Father raises the following issues:

> 1. Did the lower court abuse its discretion and commit an error of law when it held that the statutory grounds for involuntary termination of Father's parental rights to Child were met under 23 Pa.C.S.A. § 2511(a)(1), thereby determining that Father, by conduct continuing for at least six (6) months immediately preceding the filing of the petition to involuntarily terminate his parental rights, had failed or refused to perform parental duties?
>
> 2. Did the lower court abuse its discretion when it determined that terminating Father's parental rights best serves the development, physical and emotional needs and welfare of the Child?

Father's Brief, at 3-4.[2]

Father states his argument as follows:

> The lower court's holding that the statutory grounds exist to involuntarily terminate parental rights of Father under 23 Pa.C.S.A. § 2511(a)(1) is not supported by competent evidence and accordingly constitutes an abuse of discretion and/or an error

_____

[2] While Father stated his issues somewhat differently in his concise statement, we, nevertheless, find his issues preserved for our review.

of law. The evidence of record demonstrates that Father, despite his issues with substance abuse and addiction, made numerous attempts to see or otherwise have contact with Child and endeavored to perform parental duties for Child by offering financial support for Child. Additionally, to the extent that it appears that Father should have done more during the pertinent six-month time period, the totality of circumstances must be considered, including the obstacles Father faced due to the PFA [Protection From Abuse order], his incarceration and Mother's failure to answer his calls and respond to his messages asking to see Child. The totality of circumstances does not support termination of Father's parental rights under 23 Pa.C.S.A. § 2511(a)(1).

Even if the statutory grounds for involuntary termination exists under 23 Pa.C.S.A. § 2511(a)(1), the trial court's analysis of the needs and welfare of Child under 23 Pa.C.S.A. § 2511(b) does not take into account Mother's exclusion of Father from Child's life, precluding Father from sustaining the bond that he had with Child during her first year of life.

Father's Brief, at 9-10.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. In re: R.J.T., 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. Id.; R.I.S., [614 Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Id.; see also Samuel Bassett v. Kia Motors America, Inc., 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); Christianson v. Ely, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of

discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. Id.

As we discussed in R.J.T., there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. R.J.T., [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. In re Adoption of Atencio, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

In re Adoption of S.P., 616 Pa. 309, 325-26, 47 A.3d 817, 826-27 (2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. In re R.N.J., 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" Id. (quoting In re J.L.C., 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's termination of parental rights if any one subsection of section 2511(a) has been satisfied. See In re B.L.W.,

843 A.2d 380, 384 (Pa. Super. 2004) (en banc).  Here, we focus on section

2511(a)(1) and (b), which provides:

> § 2511. Grounds for involuntary termination
>
> (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> * * *
>
> (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

With respect to subsection 2511(a)(1), our Supreme Court has held as

follows.

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry:  (1) the parent's explanation for his or her conduct;  (2) the post-abandonment contact between parent and child;  and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

In re Adoption of Charles E.D.M., 550 Pa. 595, 602, 708 A.2d 88, 92

(1988).

Further, this Court has stated:

[T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

In re B.,N.M., 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

Regarding the definition of "parental duties," this Court has stated as follows:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

* * *

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

In re B.,N.M., 856 A.2d at 855 (citations omitted).

This Court has stated "once the statutory grounds for termination have been met under [s]ection 2511(a), the [trial] court must consider whether

termination serves the needs and welfare of the child, pursuant to [s]ection 2511(b)." See In re Adoption of C.L.G., 956 A.2d 999, 1008 (Pa. Super. 2008) (en banc). The focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). Id. In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." In re K.M., 53 A.3d 781, 791 (Pa. Super. 2012). In In re E.M., [533 Pa. 115, 121, 620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. In re K.M., 53 A.3d at 791.

In re: T.S.M., 620 Pa. 602, 628-629, 71 A.3d 251, 267 (2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." In re Z.P., 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not

necessary and may even be detrimental to the child." In re K.Z.S., 946 A.2d 753, 762 (Pa. Super. 2008).

We will review Father's first issue regarding whether the trial court failed to consider the obstacles and barriers erected by Mother and/or Stepfather to impede Father's performance of his parental duties, together with his second issue, whether the trial court failed to consider Child's best interest, and the effect that severing the parental relationship between Father and Child would have on Child's current and future developmental, physical, and emotional needs and welfare. See Father's Brief, at 9-10; 14-16. Father argues:

> [T]he totality of circumstances demonstrates that Father, despite his substance abuse history, attempted on numerous occasions to see Child and provide her with financial support. However, his efforts were thwarted by Mother, who, on the occasions when she responded to his calls and messages, answered his requests to see Child by telling him to go to court, and who caused him to believe that he had no legal rights. Moreover, Paternal Grandmother's credible testimony reveals that Mother told Child that she did not have a father. This statement demonstrates Mother's mindset in barring Father from Child's life.

Father's Brief, at 14-15.

Father cites In re: J.R.E., 218 A.3d 920 (Pa. Super. 2019), in which this Court reversed an involuntary termination order, and urges that In re: J.R.E. and the instant appeal are similar, so that this Court should follow In re: J.R.E. as precedent and reach the same result. He asserts:

> In In re J.R.E., the birth mother had no direct contact with her child for almost ten (10) years before the filing of the involuntary termination petition. In the instant matter, Father was a part of Child's life for her first year, after which Mother completely shut Father out of Child's life. The totality of circumstances in this case

warrants reversal of the lower court's application of 23 Pa.C.S.A.
§ 2511(a)(1) to involuntarily terminate Father's parental rights.

Father's Brief, at 15-16.

We do not agree. In In re: J.R.E., the father filed a petition to involuntarily terminate the parental rights of the mother of his minor, male child. The father had legal and physical custody of the eleven-year-old child, who had suffered shaken baby syndrome as an infant, while residing in the mother's home, at the hands of an undetermined individual. The child had been removed from the mother's care and custody at the age of six months. When the child was approximately fourteen to seventeen months old, the mother had unsupervised physical custody on weekends in Florida, until the individual who was suspected of committing the child abuse was found in the mother's home. At that point, when he was one year and nine months old, the child was placed in the physical custody of his father in Pennsylvania. The child remained in the physical custody and care of the father and his wife in Pennsylvania, and, thereafter, the child did not have any contact with the mother. In fact, the child believed that the father's wife, his stepmother, was his biological mother.

The mother had only sporadic contact with the father and had only indirect contact with the child. The mother occasionally communicated with the father by telephone and through social media, and infrequently forwarded packages containing clothing for the child. The father did not cooperate with the mother's efforts to contact the child. The father declined the mother's

telephone calls and rejected most of her packages. When the father allowed the child to keep any items that the mother sent to the child, he did not inform the child who had sent the gifts. The trial court involuntarily terminated the mother's parental rights under section 2511(a)(1) and (b). On appeal by the mother, this Court reversed, finding that the father had not satisfied his burden with regard to section 2511(a)(1), as there was no clear and convincing evidence that the mother had evidenced a settled purpose of relinquishing parental claim to a child or had refused or failed to perform parental duties.

This Court stated:

> Although the record establishes that Mother had no contact with [the child] during the relevant statutory period, and very little contact for a lengthy period prior to that timeframe, it is equally clear that the lack of contact and support is due, in substantial part, to a lack of cooperation and reasonable accommodation on the part of [the father], the custodial parent. As the October 30, 2018 opinion makes clear, the trial court made no effort to examine [the mother's] explanation for her conduct. In the absence of an individualized assessment of the explanations offered by [the mother] who faced permanent severance of her parental connection to [the child], there could be no reasoned determination that the circumstances of this case clearly called for involuntary termination. Hence, the trial court abused its discretion in finding that the record was sufficient to support termination under section 2511(a)(1)

In re: J.R.E., 218 A.3d at 925-926.

Regarding section 2511(b), we stated:

> In the exceptional circumstances presented in this case, where [the child] has not been informed of [the mother's] existence and believes that [his stepmother] is his biological mother, the trial court elected to forgo the mandatory analysis

under section 2511(b), which examines the emotional bond between a parent facing termination and her child. The court instead considered [the child's] "best interests" under 23 Pa.C.S.A. 5328(a), a statutory provision that sets forth the factors to be considered in making an award of custody. We strongly suspect that this clearly erroneous choice was made to avoid the disclosure of [the mother's] true identity to [the child], as the court adopted the GAL's belief that [the child's] reintroduction to [the mother] would be highly disruptive. See Trial Court Opinion, 10/30/18, at 3 ("It is [the trial court's] opinion that it is in [the child's] best interest to maintain the lifestyle that he has been living for approximately the past eleven years. Reintroducing [the mother] to [the child] as his biological mother would be highly disruptive and detrimental to his life, considering that he is under the belief that [his stepmother] is his mother. The [GAL] also held this same viewpoint."). In any event, while it may be correct that, in the short term, reintroduction may prove disruptive, it is more probable that [the child's] longer term interests in stability and security in knowing his true parentage can only be served by a comprehensive program of counseling and accurate identification of his biological parents. Permanently severing a bond between a natural parent and a child in order to perpetuate a relationship built upon a misrepresentation does not, clearly and convincingly, serve the long-term well-being and emotional interests of [the child]. As these unique and challenging issues were never explored by the trial court, we cannot agree that the record would support termination under section 2511(b). Accordingly, we reverse.

In re: J.R.E., 218 A.3d at 926-927 (footnote omitted).

In the instant appeal, the trial court made the following determinations regarding section 2511(a)(1) and (b):

Here, Father simply "failed to perform his parental duties" shortly after the child's first birthday. Mother did not prevent Father from visiting with or speaking to the child. In fact, the child visited with the paternal grandparents on a regular basis. By his own admission, Father's attempts to contact Mother were feeble, at best. Father did not file a Petition with the [c]ourt seeking visitation or custody of the child and Father did not bother to send the child birthday or Christmas cards or gifts. Moreover, even when he was not incarcerated, Father made no attempt to

financially support the child. Rather, Father stood by and put the burden of supporting the child solely on Mother's shoulders. Fortunately, Mother dated and married a man that was willing to love and support the child. Accordingly, this [c]ourt affirms its finding that Mother proffered clear and convincing evidence with regard to subsection (a)(1).

Having determined that Father's conduct warranted termination, the [c]ourt then turned to the issue of whether termination served the emotional needs and welfare of the child. The testimony at the hearing established without a doubt that the child's best interests would be served by terminating Father's parental rights and permitting the adoption by Stepfather to proceed. The child and Stepfather have a very strong parent[-]child bond, which, as a result of Father's actions, no longer exists between Father and the child. In addition, even though the child is not his "legal" daughter, the [s]tepfather treats her as a daughter by supporting her developmentally, emotionally, and financially. As such, the second prong of the statute has been satisfied.

For the foregoing reasons of fact and law, the [c]ourt finds that the Order of Court dated July 21, 2020 terminating Father's parental rights was supported by clear and convincing evidence; [sic] and therefore, proper under the facts of this case.

Trial Court Opinion, 9/9/20, at 3-4.

The present case is distinguishable from the scenario in In re: J.R.E., in that Mother had informed Child about Father's existence when Child was pre-kindergarten age. There was no evidence that Mother rejected any cards and/or gifts that Father would send to Child, as there was no evidence that Father, in fact, did attempt to send Child cards and/or gifts. The trial court specifically found that Mother did not serve as an obstacle between Father and Child, but, rather, that Father did not attempt to assert any rights to contact with Child. The competent evidence in the record supports the trial court's

finding. Moreover, unlike the trial court in In re: J.R.E., the trial court in the instant case properly considered section 2511(b) and determined that there is no bond between Child and Father that, if severed, would cause emotional harm to Child. Rather, the trial court found that, because of Father's lack of maintaining contact with Child, Stepfather has filled the role of father for Child, and it is with Stepfather that Child has a strong bond.

Thus, after a careful review of the record, this Court finds the trial court's decision to terminate the parental rights of Father under section 2511(a)(1) and (b) is supported by competent, clear and convincing evidence in the record. In re Adoption of S.P., 616 Pa. at 325-326, 47 A.3d at 826-827. Accordingly, we affirm the trial court order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/29/2020