J-A13011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: T.J.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.M.J., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1 WDA 2024 |

Appeal from the Order Entered December 1, 2023
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  Docket No. 2 O.A. 2023

| | | |
|---|---|---|
| IN RE: ADOPTION OF: I.T.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.M.J., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2 WDA 2024 |

Appeal from the Order Entered December 1, 2023
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  Docket No. 6 O.A. 2023

| | | |
|---|---|---|
| IN RE: ADOPTION OF: C.C.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.M.J., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3 WDA 2024 |

Appeal from the Order Entered December 1, 2023
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  5 O.A. 2023

| | | |
|---|---|---|
| IN RE: ADOPTION OF: J.M.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

J-A13011-24

|  | : |  |
| --- | --- | --- |
| APPEAL OF: J.M.J., FATHER | : | |
|  | : | |
|  | : | No. 4 WDA 2024 |

Appeal from the Order Entered December 1, 2023
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  No. 4 O.A. 2023

| IN RE: ADOPTION OF: P.J.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| --- | --- | --- |
|  | : | |
| APPEAL OF: J.M.J., FATHER | : | |
|  | : | |
|  | : | No. 5 WDA 2024 |

Appeal from the Order Entered December 1, 2023
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  No. 3 O.A. of 2023

BEFORE:  OLSON, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED: August 20, 2024**

Appellant, J.M.J. (Father), appeals from the orders entered on December 1, 2023, involuntarily terminating his parental rights to five children pursuant to 23 Pa.C.S.A. § 2511.[1]  Upon careful consideration, we affirm.

---

[1] The children who are the subjects of the trial court's termination orders are as follows:  T.J.J. (female born July, 2011), P.D.J. (female born November, 2012), J.M.J., Jr. (male born April, 2014), C.C.J. (female born July, 2016), and I.T.J. (male born March, 2018).  All of the children have the same biological mother, G.S.P. (Mother).  The trial court also involuntarily terminated Mother's parental rights to the five children.  Mother has appealed in her own right at 1501 WDA 2023, 1502 WDA 2023, 1503 WDA 2023, 1504 WDA 2023, and 1505 WDA 2023.

- 2 -

We summarize the facts and procedural history of this case as follows. Mother and Father never married. The four oldest children lived with Mother until 2017 when she was incarcerated in Texas. The youngest child, I.T.J., was born in Texas in 2018 while Mother was incarcerated, and he has never seen or met Mother since. Mother remains incarcerated following an aggravated assault conviction and was denied parole in 2022 and 2023 due to disciplinary issues while in prison. In March 2021, the Greene County Children and Youth Services (CYS) became involved with the children due to Mother's incarceration, as well as issues pertaining to Father's housing, parenting, and drug use. In April 2021, the children were adjudicated dependent. In June 2021, the children were placed with their paternal grandparents, where they remain. In January 2022, Father was incarcerated in Pennsylvania on federal charges for sex crimes against a minor. Father subsequently pled guilty to some of the charges and is currently awaiting sentencing.[2]

On January 20, 2023, CYS filed petitions for the involuntary termination of Father's parental rights to the five children. The trial court held an

_____

[2] "Although Father had not yet pleaded guilty to his charges in federal court as of the date of the termination hearing … Father pled guilty to some of the federal charges, but [had] not yet been sentenced as of the date of this brief." Father's Brief at 9 n.1. "[After consultation with Father's federal public defender, counsel for Father in this appeal], concedes that [] Father shall be incarcerated on the federal charges for the foreseeable future and that any sentence handed down by that court will be for multiple years['] incarceration hereafter." Father's Brief at 15; **see also id.** at 9 n.1 ("The federal public defender has advised that the most likely outcome, given the federal sentencing guidelines, is that Father shall receive at least eight (8) more years of incarceration at sentencing.").

evidentiary hearing on August 24, 2023. Because Father was in federal detention, he participated *in absentia* through counsel. On December 1, 2023, the trial court filed orders terminating Father's parental rights to the five children. These timely appeals followed.[3]

On appeal, Father presents the following issues for our review:

1. Whether the trial court erred in finding that [CYS] had proven by clear and convincing evidence that it had established the statutory grounds for termination under 23 Pa.C.S.[A.] § 2511(a)(1), (2), (5), and (8)?

2. Whether the trial court erred in finding that the termination of [F]ather's parental rights was in the best interests of the child[ren] under 23 Pa.C.S.[A.] § 2511(b) where the testimony indicated that there has been regular contact between [Father] and [the] child[ren] and that a bond exists between them[?]

Father's Brief at 7.

In his first issue presented, Father argues that the trial court erred by involuntarily terminating his parental rights pursuant to 23 Pa.C.S.A. § 2511(a). Father claims he "has never abandoned the children[.]" *Id.* at 15. Father maintains that the "initial grounds for dependency were [his] substance abuse and homelessness" and, as a result he "was ordered to obtain safe and appropriate housing, to complete a parenting class known as 'SAFE Parenting,' and to be evaluated for drug and alcohol issues and to follow

---

[3]  On December 28, 2023, Father filed notices of appeal and corresponding statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(4). The trial court subsequently did not file opinions pursuant to Pa.R.A.P. 1925(b) and, instead, relied upon its findings of fact entered in support of its December 1, 2023 orders. On appeal, CYS and counsel for P.D.J. have filed separate appellate briefs with this Court.

through with any recommended treatment." *Id.* at 8. "While incarcerated[,] Father completed the first phase of his SAFE Parenting classes required by the juvenile dependency court, but was unable to complete the second phase as that portion takes place in the home and [] Father could not accomplish this portion because of his incarceration." *Id.* at 15. Father also avers that he "participated in medically assisted treatment to address his substance abuse issues." *Id.* at 18-19. As such, "Father continues to argue that he is not neglecting his duties, but that his incarceration alone is the cause of his inability to complete the necessary services and obtain housing." *Id.* at 19; *see also id.* at 18 (case citation omitted) ("Father's incarceration by itself cannot be sufficient grounds for terminating his parental rights."). Furthermore, Father asserts that he has regular telephone and video conference visitation with the children from prison. *Id.* Father contends that "[c]onsidering the regular contact with their Father, and the love and bond that currently exists between all parties, terminating [] Father's parental rights [] is gratuitous, unnecessary, and not in the children's best interest[s]." *Id.* at 20. Thus, Father concludes that "the trial court erred in finding that [CYS] has proven its case by clear and convincing evidence and that statutory grounds for termination exist." *Id.* at 21.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> Appellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our

standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

[This Court has found] there are clear reasons for applying an abuse of discretion standard of review in these cases. We [have] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. Moreover, we have explained [that] the standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of [S]ection 2511(a).

*In re J.R.E.*, 218 A.3d 920, 923–924 (Pa. Super. 2019) (internal citations,

quotations, and original brackets omitted).

The involuntary termination of parental rights is governed statutorily by

Section 2511 of the Adoption Act, which requires a bifurcated analysis. *See*

23 Pa.C.S.A. § 2511. The trial court must initially determine whether the conduct of the parent warrants termination under one of the eleven enumerated grounds set forth at Section 2511(a). Only if the court determines that the petitioner has established grounds for termination under Section 2511(a) does it then engage in assessing the petition under Section 2511(b), which focuses upon the child's needs and welfare. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Here, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8). Because we may affirm on any one subsection, we will focus our analysis on Section 2511(a)(2), which provides:

§ 2511. Grounds for involuntary termination

(a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the children to be without

essential parental care, control or subsistence necessary for their physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). "A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties." *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012).

In large part, Father defends his parental rights by asserting that he has neither neglected nor abandoned his parental duties but, instead, that incarceration has been the sole impediment to his completion of services and acquisition of housing. The Pennsylvania Supreme Court addressed the relevance of incarceration in termination decisions under Section 2511(a)(2) as follows:

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*Id.*

Our Supreme Court ultimately concluded

that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S.A. § 2511(a)(2). *See e.g. Adoption of J.J.*, 515 A.2d [883,] 891 [Pa. 1986) ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re:*] *E.A.P.*, 944 A.2d [79,] 85 [(Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

*Id.* at 830.

We have explained

a parent's responsibilities are not tolled during incarceration. The focus is on whether the parent utilized resources available while in prison to maintain a relationship with his or her child. An incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with his or her children.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citation omitted). "Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *Id.* "A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citation omitted).

Here, the trial court recognized that the children had been placed with their paternal grandparents for "more than 28 months" at the time of the

- 9 -

termination hearing. Trial Court Findings of Fact, 12/1/2023, at ¶ 9; *see also id.* at ¶ 32 ("A reasonable period of time has been exhausted by the last twenty-eight (28) months and additional time does not seem likely to help."). At the time the trial court rendered its decision, Father was incarcerated and "awaiting trial on federal sex crimes against a minor." *Id.* at ¶ 13. At that time, the trial court noted that "[i]f convicted, Father face[d] life imprisonment." *Id.* Moreover, Father had not "provided the children cards, gifts, or financial support in the last two plus years" aside from a single birthday card to I.T.J. *Id.* at ¶ 21. CYS presented evidence that the children and Father's communications were supervised, the three oldest children did not want visitation with Father, and that Father was not always appropriate with the children. *Id.* at ¶¶ 25-27. Moreover, the trial court found evidence that "[t]he children have behavioral problems and an increase in their mental health issues after visits with [F]ather and the younger children seemed to regress." *Id.* at ¶ 29. As such, the trial court found that by his "conduct and non-conduct" Father showed that he "failed to perform [his] parental duties for at least the last twenty-eight (28) months." *Id.* at 33. Accordingly, the trial court terminated Father's parental rights pursuant to Section 2511(a)(2) for his "repeated and continued incapacity, neglect or refusal" to parent which "caused the children to be without essential parental care, control or subsistence necessary for their physical or mental well-being" which "cannot or will not be remedied[.]" *Id.* at ¶ 34.

After our review of the record and applicable law, we discern no abuse of discretion or error of law in involuntarily terminating Father's parental rights to all five children pursuant to Section 2511(a). It is undisputed that Father has not provided stable housing or financial support for the children for over two years and, as he concedes, homelessness was one of the conditions that led to the children's removal and caused the children to be without essential parental care. Instead, the paternal grandparents have provided that support. Father's rights simply are not preserved by waiting for a more suitable or convenient time to perform his parental responsibilities while others provide the children with their physical and emotional needs. Furthermore, the trial court appropriately considered Father's incarceration as one of the factors, but not the only factor, supporting its termination decision. The trial court properly considered the potential lengthy sentence of federal incarceration Father faces and counsel for Father concedes that Father is facing years of incarceration in the foreseeable future. For all of the foregoing reasons, we agree that CYS provided evidence that Father's incapacity has caused the children to be without essential parental care which cannot be remedied under Section 2511(a)(2). Accordingly, there is no merit to Father's first issue.

Next, Appellant argues that the trial court erred by terminating his parental rights under 23 Pa.C.S.A. § 2511(b) because "the testimony indicated that there has been regular contact between [Father and the children] and that a bond exists between them." Father's Brief at 22. As previously stated, Father asserts that, in spite of his incarceration, he has regular contact with

the children, made reasonable efforts to maintain relationships with them, and "completed all services made available to him." *Id.* at 23-24. Father maintains that his "parental rights should not be terminated due to the bond between himself and the [c]hildren as well as their developmental, physical and emotional needs." *Id.* at 24.

"[T]he party seeking termination must [also] prove by clear and convincing evidence [] that termination would best serve the child's needs and welfare pursuant Section 2511(b), in addition to termination grounds under subsection (a)." *Int. of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023) (citation and internal quotations omitted). Section 2511(b) provides, in pertinent part:

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b). In assessing Section 2511(b), "courts should consider the matter from the child's perspective, placing her developmental, physical, and emotional needs and welfare above concerns for the parent" on a case-by-case basis. *Int. of K.T.*, 296 at 1105. Our Supreme Court has provided the following guidance:

> [T]he child's emotional needs and welfare include intangibles such as love, comfort, security, and stability. [The Supreme Court] identified factors, *i.e.*, specific needs and aspects of the child's welfare, that trial courts must always consider. The court must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents. And, if the

- 12 -

child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task.

*Id.* at 1106 (internal citations and quotations omitted).

In this case, the trial court recognized that various caseworkers and service providers testified that "there is no parental bond which is a benefit to the children" and "that they believe that termination of the parents' rights will best serve the needs and welfare of the children." Trial Court Findings of Fact, 12/1/2023, at ¶¶ 22-23. As previously mentioned, CYS presented evidence that Father was not always appropriate with the children, the children have behavioral and mental health issues after contact with Father, and the three oldest children generally do not want visitation with Father. *Id.* at ¶¶ 26-29. The children have lived with paternal grandparents for over two years and "use names such as 'Pap' and 'Mom' for their [paternal] grandparents." *Id.* at ¶¶ 16 and 32. Moreover, the paternal grandparents have indicated that they want to adopt the children. *Id.* at ¶ 30. Ultimately, the trial court determined that the best interest of the children was for them to remain in their current, stable, and consistent placement with their paternal grandparents with whom they are appropriately bonded.

We discern no abuse of discretion or err of law in terminating Father's parental rights under Section 2511(b). The trial court examined the welfare and emotional needs of the children by conducting assessments of their bonds

with Father, as well as their bonds with pre-adoptive caregivers, as required.[4]

Ultimately, the trial court found it was in the children's best interest under Section 2511(b) to terminate Father's parental rights. Having discerned no abuse of discretion or error of law, we conclude Father's second issue fails.

Orders affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 08/20/2024

---

[4] Counsel for P.D.J. agrees and states that "[t]here is no bond with [F]ather due to the negative and detrimental contact with Father, visits [] had been suspended for a period of time due to the negative emotional impact on the child[.] This child has continued mental health therapy but Father has not participated or inquired [and] the kinship caregivers are preadoptive." Brief of Child Counsel for P.D.J. at 12-13.