J-A13010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: J.M.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.S.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1501 WDA 2023 |

Appeal from the Order Entered December 1, 2023
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  No. 4 O.A. of 2023

| | | |
|---|---|---|
| IN RE: ADOPTION OF P.D.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.S.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1502 WDA 2023 |

Appeal from the Order Entered December 1, 2023
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  No. 3 O.A. of 2023

| | | |
|---|---|---|
| IN RE: ADOPTION OF: C.C.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.S.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1503 WDA 2023 |

Appeal from the Order Entered December 1, 2023
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  5 O.A. of 2023

| | | |
|---|---|---|
| IN RE: ADOPTION OF: T.J.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-A13010-24

:
:
:
APPEAL OF: G.S.P., MOTHER          :
:
:
:
:
:    No. 1504 WDA 2023

Appeal from the Order Entered December 1, 2023
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  2 O.A. of 2023

IN RE: ADOPTION OF: I.T.J., A    :   IN THE SUPERIOR COURT OF
MINOR                        :         PENNSYLVANIA
:
:
APPEAL OF: G.S.P., MOTHER          :
:
:
:
:
:    No. 1505 WDA 2023

Appeal from the Order Entered December 1, 2023
In the Court of Common Pleas of Greene County Orphans' Court at
No(s):  No. 6 O.A. of 2023

BEFORE:  OLSON, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:         **FILED: August 20, 2024**

Appellant, G.S.P. (Mother), appeals from the ordered entered on December 1, 2023, involuntarily terminating her parental rights to five children pursuant to 23 Pa.C.S.A. § 2511.[1]  Upon careful consideration, we affirm.

---

[1] The children who are the subjects of the trial court's termination orders are as follows:  T.J.J. (female born July, 2011), P.D.J. (female born November, 2012), J.M.J., Jr. (male born April, 2014), C.C.J. (female born July, 2016), and I.T.J. (male born March, 2018).  All of the children have the same
*(Footnote Continued Next Page)*

- 2 -

We summarize the facts and procedural history of this case as follows. Mother and Father never married. The four oldest children lived with Mother until 2017 when she was incarcerated in Texas. The youngest child, I.T.J., was born in Texas in 2018 while Mother was incarcerated, and he has never seen or met Mother since. Mother remains incarcerated following an aggravated assault conviction and was denied parole in 2022 and 2023 due to disciplinary issues while in prison. In March 2021, the Greene County Children and Youth Services (CYS) became involved with the children due to Mother's incarceration, as well as issues pertaining to Father's housing, parenting, and drug use. In April 2021, the children were adjudicated dependent. In June 2021, the children were placed with their paternal grandparents, where they remain. In January 2022, Father was incarcerated in Pennsylvania on federal charges for sex crimes against a minor. Father subsequently pled guilty to some of the charges and is currently awaiting sentencing.

On January 20, 2023, CYS filed petitions for the involuntary termination of Mother's parental rights to the five children. The trial court held an evidentiary hearing on August 24, 2023. Because Mother is imprisoned in Texas, she participated by telephone with the assistance of appointed counsel who was present at the hearing. On December 1, 2023, the trial court filed

---

biological father, J.M.J. (Father). The trial court also involuntarily terminated Father's parental rights to the five children. Father has appealed in his own right at 1 WDA 2024, 2 WDA 2024, 3 WDA 2024, 4 WDA 2024, and 5 WDA 2024.

orders terminating Mother's parental rights to the five children. These timely

appeals followed.[2]

On appeal, Mother presents the following issue for our review:

I.      Was clear and convincing evidence presented to show that
        termination was warranted pursuant to 23 Pa.C.S.A.
        § 2511(a)(1), (a)(2), (a)(5), and (a)(8)?

Mother's Brief at 4.

Mother argues that CYS failed to present clear and convincing evidence

to involuntarily terminate her parental rights to all five children pursuant to

23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), and (a)(8). Mother acknowledges

that she "has been incarcerated in the state of Texas since 2017" and serving

"a 10[-]year sentence." *Id.* at 5. Mother "was first up for parole in 2022 and

was denied [but] was eligible for parole again in 2023."[3] *Id.* On appeal,

Mother does not dispute that she "has been incarcerated for the entirety of

the dependency action[.]" *Id.* at 11. She argues, however, that

        the evidence and testimony presented at the termination hearing
        clearly indicated that [M]other expressed, both in her words and
        in her actions, a desire to get her children back and parent them.

_____

[2]   On December 21, 2023, Mother filed notices of appeal and corresponding
statements of errors complained of on appeal pursuant to Pa.R.A.P.
1925(a)(4). The trial court subsequently did not file opinions pursuant to
Pa.R.A.P. 1925(b) and, instead, relied upon its findings of fact entered in
support of its December 1, 2023 orders. On appeal, CYS, counsel for P.D.J.,
and counsel for T.J.J. filed separate appellate briefs with this Court.

[3]   At the time this case was argued before this Court, Mother had not been
granted parole. "[M]other's maximum date for her incarceration would be
2027 if she would not be paroled earlier." Mother's Brief at 19.

- 4 -

> While [M]other was incarcerated, she took advantage of every program and service available to her at her [correctional] facility. Despite CYS not providing any services and [no services being ordered by the trial court, M]other was still able to complete [prison parenting classes] all on her own. Additionally, [M]other never voluntarily ceased contact with her children [but prison telephone communications] were terminated by [c]ourt order[.[4] A]t every dependency hearing after, [M]other was asking to have them reinstated so she could at least communicate with the children. Those phone calls were never reinstated until after the termination petition was filed.
>
> The only argument that CYS makes in support of termination is that [M]other was provided the ability to at least write letters to the children and she only chose to write two [letters]. This argument[,] however[,] fails to take into account all the other circumstances effecting her.
>
> [M]other was incarcerated [halfway across the country] and was provided zero assistance from CYS. Not a single call was made to [M]other explaining [proper communications and no one] acknowledged [] that the letters she wrote were received.
>
> For all intents and purposes, [M]other was cut off from her children by the actions of CYS. While [M]other's incarceration is a self-inflicted barrier between her and her children, CYS's actions in terminating her phone contact and subsequently ceasing all contact and assistance with her had a significant effect on how this case played out. In fact, it is clear from the testimony and evidence that [M]other made more significant efforts in attempting reunification with her children than CYS did in providing her assistance.

*Id.* at 11-13. Mother also argues that the trial court cannot rely solely upon her incarceration in terminating her parenting rights and that "[b]eyond her incarceration, there is nothing else to show that [she] is incapable of

---

[4] **See also** Mother's Brief at 6 ("[M]other's [prison] phone call visits were discontinued by the [trial c]ourt at the request of CYS due to the children's behavioral issues.").

remedying the conditions that led to the removal of the children." *Id.* at 19-20.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> Appellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> [This Court has found] there are clear reasons for applying an abuse of discretion standard of review in these cases. We [have] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.
>
> The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. Moreover, we have explained [that] the standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

- 6 -

> This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of [S]ection 2511(a).

*In re J.R.E.*, 218 A.3d 920, 923–924 (Pa. Super. 2019) (internal citations, quotations, and original brackets omitted).

The involuntary termination of parental rights is governed statutorily by Section 2511 of the Adoption Act, which requires a bifurcated analysis. *See* 23 Pa.C.S.A. § 2511. The trial court must initially determine whether the conduct of the parent warrants termination under one of the eleven enumerated grounds set forth at Section 2511(a).[5] *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Here, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8).  Because we may affirm on any one subsection, we will focus our analysis on Section 2511(a)(2), which provides:

> § 2511. Grounds for involuntary termination
>
> **(a) General rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> *   *   *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and

---

[5]  "Only if the court determines that the petitioner has established grounds for termination under Section 2511(a) does it then engage in assessing the petition under Section 2511(b), which focuses upon the child's needs and welfare." *T.S.M.*, 71 at 267.  Here, however, Mother does not challenge the trial court's application of Section 2511(b) and, thus, it is unnecessary for us to review.

> causes of the incapacity, abuse, neglect or refusal cannot or
> will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the children to be without essential parental care, control or subsistence necessary for their physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). "A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties." *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012).

In large part, Mother defends her parental rights by asserting that she has neither neglected nor abandoned her parental duties but, instead, that incarceration has been her sole impediment. The Pennsylvania Supreme Court addressed the relevance of incarceration in termination decisions under Section 2511(a)(2) as follows:

> [I]ncarceration is a factor, and indeed can be a determinative
> factor, in a court's conclusion that grounds for termination exist

under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*Id.*

Our Supreme Court ultimately concluded

that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S.A. § 2511(a)(2). *See e.g. Adoption of J.J.*, 515 A.2d [883,] 891 [Pa. 1986) ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re:*] *E.A.P.*, 944 A.2d [79,] 85 [(Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

*Id.* at 830.

We have explained

a parent's responsibilities are not tolled during incarceration. The focus is on whether the parent utilized resources available while in prison to maintain a relationship with his or her child. An incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with his or her children.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citation omitted). "Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *Id.* "A parent's own feelings

- 9 -

of love and affection for a child, alone, do not prevent termination of parental rights." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citation omitted).

Here, the trial court recognized that the children had been placed with their paternal grandparents for "more than 28 months" at the time of the termination hearing. Trial Court Findings of Fact, 12/1/2023, at ¶ 9; *see also id.* at ¶ 32 ("A reasonable period of time has been exhausted by the last twenty-eight (28) months and additional time does not seem likely to help."). At the time the trial court rendered its decision, Mother had "been incarcerated in Texas since 2017 [and] was denied parole in 2022 due to disciplinary problems [in prison] and the serious nature of her conviction [for] aggravated assault." *Id.* at ¶ 12. The trial court noted that Mother was "eligible for parole in September 2023." *Id.* Currently, Mother concedes that her parole was denied in 2023 and that her maximum date for her incarceration is 2027, unless paroled earlier. Mother's Brief at 5 and 19. Moreover, the trial court recognized that Mother "has never had in-person or virtual visits with the children" and has not "provided the children cards, gifts, or financial support in the last two plus years" and, instead "has only written two letters." Trial Court Findings of Fact, 12/1/2023, at ¶¶ 15, 17, and 21. CYS presented evidence that "[a]ll of the children refused to speak to Mother [after] the fourth telephone call" from prison. *Id.* at ¶ 28. As such, the trial court found that by her "conduct and non-conduct" Mother showed that she "failed to perform [her] parental duties for at least the last twenty-eight (28) months."

*Id.* at 33. Accordingly, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(2) for her "repeated and continued incapacity, neglect or refusal" to parent which "caused the children to be without essential parental care, control or subsistence necessary for their physical or mental well-being" which "cannot or will not be remedied[.]" *Id.* at ¶ 34.

After our review of the record and applicable law, we discern no abuse of discretion or error of law in involuntarily terminating Mother's parental rights to all five children pursuant to Section 2511(a). It is undisputed that Mother has not provided stable housing or financial support for the children for over two years and, therefore, caused the children to be without essential parental care. Instead, the paternal grandparents have provided that support. The children have lived with paternal grandparents for over two years and "use names such as 'Pap' and 'Mom' for their [paternal] grandparents." *Id.* at ¶¶ 16 and 32. Moreover, the paternal grandparents have indicated that they want to adopt the children. *Id.* at ¶ 30. Ultimately, the trial court determined that the best interest of the children was for them to remain in their current, stable, and consistent placement with their paternal grandparents with whom they are appropriately bonded. Mother's rights simply are not preserved by waiting for a more suitable or convenient time to perform her parental responsibilities while others provide the children with their physical and emotional needs. Furthermore, the trial court appropriately considered Mother's incarceration as one of the factors, but not the only factor, supporting its termination decision. The trial court properly considered the

potential lengthy sentence Mother faces and counsel for Mother concedes that Mother has recently been denied parole and is facing years of incarceration in the foreseeable future. In addition, while Mother currently claims that she has taken parenting classes in prison, the trial court noted that Mother never informed the court or CYS of any prison programs she completed. *Id.* at ¶ 15. Upon review, aside from her testimony, there is simply no record evidence that Mother completed parenting services while imprisoned in Texas. Regardless, Mother was expected to utilize **all** available resources to foster a continuing close relationship with the children. She was provided with the children's address at all relevant times, "but declined stamps, paper and pens" and only wrote two letters since 2018 despite having five children. *Id.* at ¶ 18. Such evidence showed that Mother failed to utilize all resources available to her. Finally, Mother's own feelings of love and affection for the children, did not prevent termination of her parental rights. For all of the foregoing reasons, we agree that CYS provided evidence that Mother's incapacity has caused the children to be without essential parental care which cannot be remedied under Section 2511(a)(2). Accordingly, there is no merit to Mother's sole appellate issue.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 08/20/2024